UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| **TALIA BLAKENSHIP,** | **CIVIL ACTION NO. 7:24-10-KKC** |
| **Plaintiff,** | |
| V. | **OPINION AND ORDER** |
| **PIKEVILLE MEDICAL CENTER, INC., et al.,** | |
| **Defendants.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff's Motion to Remand (DE 5) and Emergency Motion to Remand (DE 6). Plaintiff seeks remand based on the arguments that the removal period had expired before Defendants filed their notice of removal and that the case does not contain a substantial federal question. For the reasons stated herein, Plaintiff's motions are DENIED.

**I.     Background**

Plaintiff filed suit in Pike Circuit Court on August 8, 2020. (DE 1-2.) The complaint filed contained claims of medical malpractice, vicarious liability, negligent hiring and training, and punitive damages against six defendants. (DE 1-2.) Plaintiff's complaint did not assert any federal claims, however, subsequent filings mentioned the Emergency Medical Treatment and Labor Act ("EMTALA"). For example, in response to Defendants' motion to dismiss, Plaintiff stated:

> …Plaintiff's claim against Dr. Ali 'may be predicated upon [his] refusal' to admit or provide adequate care to Plaintiff during her medical emergency. Likewise, federal regulations such as the Emergency Medical Treatment and Active Labor Act ("EMTALA") recognize that making a decision to admit, discharge or transfer a patient is considered treatment of the patient in the context of a medical emergency. *See Martin v. Ohio County Hosp. Corp.*, 295 S.W.3d 104, 113 (Ky. 2009) ("If the hospital determines that an emergency medical condition exists, then the stabilization-or-transfer requirement kicks in. This requires the hospital to

1

provide additional medical examination and treatment within its capabilities or to transfer the person to an appropriate facility. In reality, the medical emergency may require some treatment, if within the hospital's capability, before transfer….").

(DE 5-2 at pp. 5-6.) Plaintiff further stated in her response that "Dr. Ali's decision to discharge [Plaintiff], and his decision to neither transfer nor admit her is…treatment for which liability may follow under state and federal law." (*Id.* at 10.) With this response, Plaintiff submitted a proposed order, later adopted by the Pike Circuit Court, stating:

> Dr. Ali Butt has suggested that the holding in *Martin* is inapplicable here, since Plaintiff did not plead an EMTALA violation against him. While it is true that no EMTALA violation has been expressly pleaded, the Court nevertheless finds that both the EMTALA statute and the Martin opinion serve, at the very least, as persuasive authority as to a physician's duty to a patient in a medical emergency.

(DE 5-3.) Following the court's order denying dismissal, the parties engaged in discovery. Throughout discovery, EMTALA was mentioned over one hundred times in, among other documents, requests for Defendants' EMTALA policies and procedures and in depositions in the context of a medical provider's standard of care. Additionally, during an oral argument on a motion to compel Defendant Appalachian Regional Health's policies and procedures, Plaintiff's counsel stated:

> Plaintiffs have alleged ARH and other parties, but ARH for the purposes of this discussion, through their agents, violated –several policies and procedures, and several elements of the law, including EMTALA. . . .We have experts lined up ready to discuss whether or not ARH, through their apparent agents and they themselves violated elements of EMTALA, elements of lack of informed consent, and elements of just medical negligence. They can comment on the federal and state elements of that but, unfortunately, we do not have all of the necessary P&Ps from ARH for them to make those determinations."

(DE 5-10 at 4.) Defendants filed a notice of removal on January 26, 2024, after Plaintiff filed her expert disclosures, which included an opinion that Defendants violated EMTALA. Plaintiff filed a motion to remand on February 9, 2024, and an emergency motion to remand on February 22, 2024. Plaintiff cites impending state court deadlines as the source of emergency.

2

## II. Analysis

Blakenship makes two arguments in support of remand: (1) the Defendants did not timely file their notice of removal, and (2) the case does not present a substantial federal question. The Court will address these arguments in turn.

### a. Removal

A defendant removing an action to federal court must file a notice of removal. 28 U.S.C. § 1446(a). Generally, the defendant must file the notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id.* § 1446(b)(1). The 30–day period in § 1446(b)(1) starts to run only if the initial pleading contains "solid and unambiguous information that the case is removable." *Berera v. Mesa Med. Grp., PLLC,* 779 F.3d 352, 364 (6th Cir. 2015). If the initial pleading lacks solid and unambiguous information that the case is removable, the defendant must file the notice of removal "within 30 days after receipt ... of a copy of an amended pleading, motion, order or other paper" that contains solid and unambiguous information that the case is removable. *See* 28 U.S.C. § 1446(b)(3); *see also Berera,* 779 F.3d at 364.

Here, Defendants removed the case on January 26, 2024. Therefore, for Defendants' notice of removal to be timely, they must not have had solid and unambiguous information that the case was removable on or before December 28, 2023. Blakenship's Complaint did not provide information that Defendants could remove the case as it only asserted state-law claims. Blakenship never amended the Complaint, so any information regarding the federal nature of Plaintiff's claims must have come from an "other paper."

3

Plaintiff claims that the Defendants received notice that the case was removeable at the time Blankenship filed her response to Defendants' motion to dismiss in Pike Circuit Court on September 2, 2020. The response references EMTALA and states that "liability may follow under state and federal law." (DE 5-2 at 11.) Plaintiff argues that her cite to *Martin* makes the federal nature of her claim clear. Defendants, however, contend that *Martin* had multiple holdings and was cited in a string of cases supporting Plaintiff's negligence theory, thus the cite did not amount to solid and unambiguous information that Plaintiff was bringing an EMTALA claim. Further, the Plaintiff's proposed order attached to her response, later adopted by the Pike Circuit Court, made it even more unlikely that Plaintiff was bringing a federal claim. In it, Plaintiff reaffirmed that she was not asserting an EMTALA claim, as she stated, "While it is true that *no EMTALA violation has been expressly pleaded*, the Court nevertheless finds that both the EMTALA statute and the *Martin* opinion serve, at the very least, as persuasive authority as to a physician's duty to a patient in a medical emergency." (DE 5-5 at 8 (emphasis added).) With this statement affirming that Plaintiff was not asserting an EMTALA claim, Defendant did not have solid and unambiguous information that the case was removable at that point.

Next, Plaintiff contends that Defendants should have been on notice of the EMTALA claim by Plaintiff's discovery requests for Defendants' EMTALA policies and procedures and deposition questions regarding EMTALA. However, the relevancy standard for discovery is very broad. *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 811 (Ky. 2004) ("The question of relevancy is more loosely construed upon pre-trial examination than at the trial, and the Rule requires only relevancy to the subject matter involved in the action."). Accordingly, merely inquiring into EMTALA procedures was not enough to put Defendants on notice that Plaintiff was asserting an EMTALA claim.

Last, Plaintiff argues that the oral argument by Plaintiff's counsel during a November 17, 2024 hearing on Plaintiff's motion to compel EMTALA policies provided notice to Defendants that the case was removeable.[1] (DE 8 at 23-24.) At the hearing, counsel stated they had "experts lined up ready to discuss whether [Defendants]. . . .violated elements of EMTALA," and that they could "comment on the federal. . . . elements," but "did not have all of the necessary [policies and procedures] for them to make those determinations." (DE 5-10 at 4.) These statements made it clear that EMTALA violations were being explored by Plaintiff, but Plaintiff's statement also conveyed that she did not have enough information at the time to assert a federal claim. Therefore, counsel's comments failed to show that Defendants had solid and unambiguous information that the case was removeable on November 17.

Although EMTALA was mentioned at times throughout litigation in Pike Circuit Court, Plaintiff never expressly asserted that she was bringing an EMTALA claim, nor did she amend her complaint to add a federal claim. Instead, Defendants were presented with a complaint asserting state law claims and Plaintiff's statements that there *may* be liability under federal law and Plaintiff was seeking information to explore whether federal violations occurred. This did not amount to solid and unambiguous information that Plaintiff was asserting an EMTALA claim. Because of this, Defendants waited until Plaintiff's experts opined that EMTALA violations did occur and then removed the action. It's uncertain whether even these expert opinions began the removal clock, but regardless, Defendants removed in a timely manner.

b.  **Substantial Federal Question**

---

[1] The meaning of "other paper" has been interpreted as expansive. Courts have held that hearing transcripts are considered "other papers" under § 1446(b)(3). *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352 (6th Cir. 2015).

In addition to arguing that Defendants did not timely remove the action, Plaintiffs contend that there is no substantial federal question in the action justifying federal jurisdiction. (DE 5-1 at 10.)

EMTALA creates a private right of action under federal law in 42 U.S.C. § 1395dd(d)(3)(A), stating:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

Federal courts have jurisdiction under 28 U.S.C. § 1331 in "only those cases in which a well-pleaded Complaint establishes either that federal law creates the cause of action or that the plaintiffs right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983). The private cause of action created by EMTALA meets each of the alternative prongs of the *Franchise Tax* test. *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). First, the action depends upon "resolution of a substantial question of federal law" because a plaintiff under the Act must show that she was suffering from an "emergency medical condition" and that the defendant transferred her before she was "stabilized" within the meaning of the Act. *Id.* Second, Congress created a new, federal cause of action separate from a state medical malpractice claim. *Id.* Plaintiff has stated that she is now asserting an EMTALA claim even though she has not yet amended her Complaint. (DE 5-1 at 10.) Accordingly, since an EMTALA claim is now being asserted, federal jurisdiction exists.

### III. Conclusion

For these reasons, the Court hereby ORDERS:

1. Plaintiff's Motion to Remand (DE 5) and Emergency Motion to Remand (DE 6) are DENIED; and

2. Plaintiff's Motion for a Hearing on the matter (DE 10) is DENIED.

This 23rd day of May, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY